# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TIMOTHY R. BULL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-14-541-JHP-SPS |
| ) | |
| CAROLYN COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Timothy R. Bull requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on February 4, 1986, and was twenty-seven years old at the time of the administrative hearing (Tr. 28). He completed high school while attending special education classes, and has worked as a warehouse loader and forklift operator (Tr. 17, 200, 243, 316). The claimant alleges that he has been unable to work since June 7, 2011, due to his epilepsy (Tr. 200).

## Procedural History

On June 13, 2011, the claimant for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ John W. Belcher held an administrative hearing and determined the claimant was not disabled in a written opinion dated July 19, 2013 (Tr. 10-19). The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. The ALJ determined that the claimant had the RFC to perform a full range of work at all exertional levels, but with the additional nonexertional impairments of: no climbing stairs, ladders, ropes, or scaffolds; avoiding all exposure to hazardous or fast machinery, unprotected heights, driving, and pools of water; performing simple tasks in a habituated work

setting; and having no more than superficial contact with co-workers, supervisors, and the public (Tr. 14). The ALJ found that the claimant could not return to his past relevant work, but was nevertheless not disabled because there was work that he was capable of performing, *i. e.*, hand packager, laborer, and marker (Tr. 18).

## Review

The claimant contends that the ALJ erred: (i) by improperly determining that the claimant did not satisfy the criteria of Listing 12.05C in the Medical-Vocational Guidelines, and (ii) by failing to properly reflect his mental impairments in the RFC assessment. The undersigned Magistrate Judge finds that the ALJ *did* fail to properly determine whether the claimant satisfied the criteria of Listing 12.05C, and the decision of the Commissioner should therefore be reversed.

The record reflects that the claimant attended high school in Beggs, Oklahoma, and graduated in 2004. Jessie Spring, Special Services Administrator at Beggs Public Schools, submitted the claimant's high school record, which indicated that the claimant graduated with a gpa of 2.67 and class rank of 36/57 (Tr. 244). Additionally, Ms. Spring indicated that the claimant attended special education classes at Beggs, but that paper Special Education records were destroyed upon five years of inactivity, per district policy (Tr. 243). Additionally, Ms. Spring signed an affidavit in which she stated that she personally knew the claimant, that she taught him in his special education classes, that testing indicated he had a low IQ and was learning disabled, and that he was in special education classes because his impairments prevented him from being mainstreamed (Tr. 316). The claimant's representative also submitted job records from 2002, when the

claimant was in high school, which indicate that the claimant had a "severe learning disability" and "functional limitations in the areas of work skills and work tolerance" (Tr. 281), and further indicated that the claimant had a mental disability that impaired his cognitive functioning (Tr. 282). The client data sheet indicated that the claimant's education level was "Special Education Certificate of Completion/Attendance," and that his primary disability was "cognitive impairments caused by specific learning disabilities" (Tr. 284).

The claimant was evaluated by state consultative examiner Marion Sigurdson, Ph.D. on November 5, 2012 (Tr. 408-414). During this appointment, Dr. Sigurdson administered the Wechsler Adult Intelligence Scale-III (WAIS-3), the results of which indicated that claimant had a verbal IQ of 75, a performance IQ of 70, and a full scale IQ of 70, along with a verbal comprehension index of 78 and a perceptual organization index of 72, placing him in the borderline range of intellectual disability and in the 2nd percentile when compared to other adults his age (Tr. 412). Dr. Sigurdson diagnosed the claimant with: cognitive disorder not otherwise specified and adjustment disorder not otherwise specified, along with borderline intelligence (Tr. 414).

Although the claimant bears the burden of proof at step three to establish that he meets or equals the requirements for a listed impairment, *see Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005), the ALJ's responsibilities at step three of the sequential analysis require him to determine "whether the claimant's impairment is equivalent to one of a number of listed impairments that . . . [are] so severe as to preclude substantial gainful activity." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)

[quotation omitted]. *Clifton* requires the ALJ to discuss the evidence and explain why claimant was not disabled at step three. *Id*. at 1009, *citing Cook v. Heckler*, 783 F.2d 1168, 1172-73 (4th Cir. 1986).

At step three of the sequential evaluation, the ALJ determined that the claimant's severe impairment of borderline intelligence did not meet section 12.05 of the Listing of Impairments because "the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function" (Tr. 14). His findings related to Listing 12.05C are wholly unsupported by both the record and his own findings at step two and step four. In order to satisfy section 12.05C, the claimant must first satisfy the diagnostic description included in the introductory paragraph which requires that the claimant possess "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i. e.*, the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.05. This initial requirement is referred to as the "capsule definition." *Peck v. Barnhart*, 214 Fed. Appx. 730, 736 (10th Cir. 2006) [unpublished opinion]. In addition to satisfying the capsule definition, the claimant must also satisfy two additional prongs in order to meet the requirements of Listing 12.05C: "a valid verbal, performance, or full scale IQ of 60 through 70 *and* a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]" 20 C.F.R. pt. 404, subpt. P, app. 1 [emphasis added].

As to the capsule definition applicable to the entirety of Listing 12.05, the ALJ's opinion wholly failed to discuss whether the claimant satisfied the capsule definition. In spite of the claimant's hearing testimony that he was in the special education program at his high school, Ms. Spring's letter and affidavit stating his placement in special education classes was attributed to a low IQ score and learning disability, and the work placement records indicating the type of high school certificate and nature of the claimant's impairment, the Commissioner nevertheless argues that there is no evidence the claimant had the requisite deficits in adaptive functioning prior to age 22. However, "[t]he Commissioner's argument ignores our ruling in *Clifton* where we held that we can only review ALJ decisions that make specific findings on the facts of the case. If [the claimant] does not meet the capsule definition, then the ALJ must make that determination in the first instance." *Peck*, 214 Fed. App. at 736. Moreover, if the ALJ disagreed with the entirety of the record regarding the claimant's impairments and whether they were established prior to age 22, then he would have been required to discuss his reasons for such a finding. *See, e. g.*, *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others. An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability. . . . [T]he ALJ did not state that any evidence conflicted with Dr. Rawlings' opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of Dr. Rawlings' restrictions but not

others. We therefore remand so that the ALJ can explain the evidentiary support for his RFC determination.").

Turning to the two prongs of section 12.05C, "'the purpose of § 12.05C is to compensate a claimant with an IQ in the 60-70 range and a limitation of function that affects his work.'" *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997), *quoting Sird v. Chater*, 105 F.3d 401, 403 n.6 (8th Cir. 1997). With respect to the requirements specifically comprising Listing 12.05C, the ALJ even acknowledged that the claimant clearly satisfies the first prong of the listing since his performance and full scale IQ scores were both 70 (Tr. 13, 412). *See* § 12.00D(6)(c) ("In cases where more than one IQ is customarily derived from the test administered, *e. g.*, where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05.").

The second prong of Listing 12.05C requires the claimant to have a "physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05C. The Tenth Circuit has adopted the view of the First and Eleventh Circuits that a "§ 12.05C limitation is significant if the claimant suffers from a severe physical or other mental impairment, as defined at step two of the disability analysis, apart from the decreased intellectual function." *Hinkle*, 132 F.3d at 1352. ("We conclude the analysis employed by the First and Eleventh Circuits is the better interpretation of what must be shown to satisfy the second prong of § 12.05C."), *citing Edwards v. Heckler*, 736 F.2d 625, 629-631 (11th Cir. 1984) and *Nieves v. Secretary of Health & Human Services*, 775 F.2d 12, 14 & n.7

(1st Cir. 1985). "[W]hether a claimant has a § 12.05C 'significant limitation' should 'closely parallel' the step two standard, and is to be made without consideration of whether the claimant can perform any gainful activity beyond the analysis as made at step two." *Hinkle*, 132 F.3d at 1352-1353, *citing Fanning v. Bowen*, 827 F.2d 631, 634 (9th Cir. 1987) (if claimant meets the § 12.05C listing and the durational requirement, "he must be found disabled without consideration of his age, education, and work experience[.]") [internal citations omitted]. Here, the ALJ determined that, in addition to borderline intelligence, the claimant had the severe impairments of epilepsy, cognitive disorder NOS, and adjustment disorder NOS (Tr. 12). This was sufficient to satisfy the second prong. *See Peck*, 214 Fed. Appx. at 734 ("Based on the ALJ's findings [that the claimant had severe impairments that combined to significantly limit her ability to perform basic work-related functions *and* was unable to perform her past relevant work], Peck meets the additional significant impairment requirement under Listing 12.05C."), *citing Hinkle*, 132 F.3d at 1352-1353 & n.4. But even if the ALJ did not find that the claimant had an additional and significant work-related limitation of function, the ALJ's conclusion that the claimant could not perform his past relevant work (Tr. 17) meets the second prong of Listing 12.05C. See *Hinkle*, 132 F.3d at 1353 n.4 ("Needless to say, a claimant's inability to perform his past relevant work would meet the second prong of §12.05C."). *See also Peck v. Barnhart*, 214 Fed. Appx. 730, 734 (10th Cir. 2006) ("Based on the ALJ's findings [that the claimant had severe impairments that combined to significantly limit her ability to perform basic work-related functions *and* was unable to perform her past relevant work], Peck meets the additional significant impairment

requirement under Listing 12.05C."), *citing Hinkle*, 132 F.3d at 1352-1353 & n.4. Thus, contrary to the ALJ's conclusion regarding Listing 12.05C, the claimant *did* provide evidence that his impairment existed before the age of 22, and *both* that he had an IQ score in the range of 60-70 *and* a "physical or other mental impairment imposing an additional and significant work-related limitation," either by his epilepsy, cognitive disorder, and adjustment disorder, *or* by his inability to perform his past relevant work.

Because the ALJ's findings at step three with regard to Listing 12.05C are not supported by substantial evidence, the decision of the Commissioner should be REVERSED and the case REMANDED to the ALJ for further analysis as outlined above.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 3rd day of March, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**